RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE ___3___ 2⁵_____ 06
BY ___Dm_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| IMOGENE KHAN, ET AL. | CIVIL ACTION NO. 00-0255 |
| VERSUS | JUDGE DONALD E. WALTER |
| SOUTHERN UNIVERSITY A & M COLLEGE, SOUTHERN UNIVERSITY BOARD OF SUPERVISORS, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This matter comes before this Court on remand from the Fifth Circuit "for more factual elaboration [on] any qualified immunity claims in regard to §§ 1981, 1983, 1985 and 1986." Khan v. Southern Univ., 2005 WL 1994301, *3 n. 15 (5th Cir. 2005). After a review of the record on summary judgment, for the reasons assigned herein, this Court finds that defendants are entitled to qualified immunity as to plaintiff's §1983 freedom of association claim, and the related §1985 and §1986 claims. This Court further finds that defendants Juanita Morris and Sam Gilliam ("Gilliam") are entitled to qualified immunity as to plaintiff's §1981 and §1983 free speech and due process claims; Gilliam is entitled to qualified immunity as to plaintiff's related §1986 claim. Juanita Morris and Gilliam had no authority over plaintiff at the time of the actions alleged to have violated plaintiff's rights. Genuine issues of material fact exist as to all other claims addressed herein, and, thus, remain to be determined at a trial on the merits.

## STATEMENT OF THE CASE

Imogene Khan ("Khan") and Eugene Early ("Early") brought suit against defendants, Southern University & Agricultural & Mechanical College Board of Supervisors, Benjamin Pugh, Grady Morris, Jeannette Williams, Sam Gilliam, James Brown, individually and in his official

capacity as Chancellor of the Southern University-Shreveport campus, and Juanita Morris, alleging various claims. Khan settled her claims against defendants prior to the Fifth Circuit issuing <u>Khan,</u> <u>supra.</u> Thus, the only claims left at the time of the opinion were those asserted by Early that included Title VII claims based on race and sex discrimination, Title VII claims based on race and sex retaliation, 42 U.S.C. § 1981 claims based on racial discrimination and retaliation, a variety of 42 U.S.C. § 1983 claims,[1] 42 U.S.C. § 1985 conspiracy claims and a claim under 42 U.S.C. § 1986. As stated above, the Fifth Circuit has limited the scope of this Court's review of its prior ruling denying defendants' Motion for Dismissal and Summary Judgment. In the interest of efficiency, for purposes of this review, the Court adopts the facts as stated by the Fifth Circuit in <u>Khan, supra.</u>

### SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. <u>Id.</u> The court must "review the facts drawing all inferences most favorable to the party opposing the motion." <u>Reid v. State Farm Mutual Auto Insurance Co.,</u> 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its

---

[1] Early testified in his deposition that he is not asserting a race discrimination claim. Early depo., p. 37. Accordingly, this Court need not address such a claim.

2

motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. International Short Stop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

## LAW AND ANALYSIS

### I.  Qualified immunity.

The determination of immunity is a threshold question that must be resolved inasmuch as it

determines a defendant's immunity from suit rather than immunity from damages. Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993). To determine whether qualified immunity applies, the court must determine (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct is objectively unreasonable in light of the clearly established law when the incident took place. Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002).

First, the court must determine whether the plaintiff has alleged a deprivation of a constitutional right at all. Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). This determination is made using currently applicable constitutional standards. Nerren v. Livingston Police Department, 86 F.3d 469, 473 (5th Cir. 1996). If the plaintiff has made such an allegation, the court must then decide if the defendant's conduct was objectively reasonable, using the standards applicable at the time the events occurred. Id.; Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir. 1994). If, upon viewing the evidence in the light most favorable to the non-movant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992).

The doctrine of qualified immunity shields public officials "performing discretionary functions 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Fraire, 957 F.2d at 1273, quoting Anderson, 483 U.S. at 638. The qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

4

## II.    Qualified Immunity Analysis of Plaintiff's Claims.

### A.    §1981 Claims.

Early asserts claims pursuant to 42 U.S.C. § 1981 alleging that he was retaliated against by defendants because he openly opposed and complained about the unlawful race discrimination practiced against Khan. In their motion, defendants assert that Early's §1981 claims should be dismissed because he is not a minority at his place of employment. Defendants' assertion has no merit as the Fifth Circuit in Pinkard v. Pullman-Standard, 678 F.2d 1211, 1229 n. 15 (5th Cir. 1982), explained that "[a] claim under §1981 may be based upon retaliatory action taken against an employee for the employee's lawful advocacy of the rights of racial minorities."[2]  As noted by defendants, Early was in the majority at Southern University. However, Early's §1981 claim is based upon his advocacy of the rights of Khan, a member of the racial minority at Southern University. Accordingly, this Court must evaluate whether defendants are entitled to qualified immunity with respect to Early's §1981 retaliation claims.

Claims against individual public officials under §1981 are subject to the defense of qualified immunity, as are claims against such individuals under §1983. Foley v. University of Houston System, 355 F.3d 333, 337 (5th Cir. 2003). Of course, the issue of qualified immunity arises only if the individual official is subject to liability in the first place, and §1981 liability does not necessarily run to all individual defendants. Id. Although the Fifth Circuit has not yet discussed the

---

[2]See also Winston v. Lear-Siegler, 558 F.2d 1266 (6th Cir. 1977) (stating that white person fired for protesting an asserted racially motivated firing of a nonwhite may sue under §1981); Caldwell v. Nat'l Brewing Co., 443 F.2d 1044 (5th Cir. 1971) (stating that plaintiff alleging that he was discharged because he complained about racially discriminatory employment practices may intentionally bypass EEOC and seek relief under §1981).

full parameters of §1981 liability of individual supervisors, it has accepted that "§1981 liability will lie against an individual defendant if that individual is essentially the same as the State for the purposes of the complained-of conduct." Id. (internal quotations and citations omitted).

This Court finds that with the exceptions of Juanita Morris, wife of defendant Grady Morris and secretary to defendant Williams, and defendant Gilliam who was Interim Chancellor of Southern University from July 1998 to April 1999, there is a genuine issue of material fact as to whether the individual defendants are "essentially the same as the State" for purposes of the complained of retaliatory conduct. Juanita Morris, as the secretary to an administrator, had no authority with regard to Early's non-promotion and/or termination, and plaintiff has provided no evidence to the contrary. Further, the complained of conduct occurred after April of 1999 when, according to the record before this Court, Gilliam no longer had any authority over Early. This Court now proceeds to determine whether the remaining individual defendants are entitled to qualified immunity.

The elements of a §1981 cause of action for an employee who suffers retaliation in response to his alleging racial discrimination are: (1) that the plaintiff engaged in activities protected by §1981; (2) that an adverse employment action followed; and (3) that there was a causal connection between the two. Foley, 355 F.3d at 339. An employee's claim that he was subjected to retaliation because he complained of race discrimination is a cognizable claim under §1981(b). Id.[3]

At all relevant times, an objectively reasonable public official should have been aware of an

_____

[3]Prior to Foley, supra, there was a question as to whether claims relating to discriminatory discharge or retaliation were allowed under §1981. See Patterson v. McClean Credit Union, 491 U.S. 164, 179, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (holding that §1981 covered only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process); see also The Civil Rights Act of 1991 (expanding §1981 to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship").

employee's right to be free from retaliation for complaining about race discrimination. <u>Foley</u>, 355 F.3d at 339. Nevertheless, defendants are protected by qualified immunity unless objectively reasonable officials in their position would have been aware that the specific actions alleged and shown by summary judgment proof violated the statutory rights conferred by §1981. Early engaged in protected activity when he complained to Joe Gant, a member of the Board of Supervisors, Dr. Barry Hester, Vice-President of the Faculty Senate, and Professor Willie Burton, President of the Faculty Senate, "about the sexist and racist treatment of Khan." Plaintiff's Exh. FF, Early aff., ¶ XVIII; <u>see</u> Plaintiff's Exh. GG, Early depo., pp. 39-40; Plaintiff's Exh. LL, Burton depo., pp. 20-26. Early's non-promotion from interim Assistant Chief of Police to permanent Assistant Chief of Police and his termination represent adverse employment actions. <u>See Foley</u>, 355 F.3d at 340.

With reference to causal connection, Early has offered evidence that Ron Stamps ("Stamps"), a former professor at Southern University, had a conversation with defendant Brown when Stamps returned a Civil Service document related to Khan accidentally received by Stamps. When Brown took the document from Stamps, Brown allegedly stated, "Oh, this is related to Mrs. Khan. We don't need a white woman as police chief here. . . . There wouldn't be any white institution with a black police chief." Plaintiff's Exh. RR, Stamps depo., pp. 18-21. Early also offered the testimony of Joel Johnson ("Johnson"), a police officer at Southern University, who stated that while Khan was acting as interim Chief, defendant Grady Morris told Johnson that he did not think a white female should be a police chief "running a university over black men." Plaintiff's Exh. SS, Johnson depo., pp. 30-31. Further, Michael Hill ("Hill"), another police officer at Southern University, testified at his deposition that Grady Morris stated: "I'll be damned if I'll let a white female at a predominantly historically black school, run us. Don't you think that right, Officer Hill? I would say. Best woman

for the job or best man." Plaintiff's Exh. TT, Hill depo., pp. 72-74. Hill also testified that Grady Morris indicated that he was going to "roll [Khan] out" and that Early was going to be next. Id. at pp. 73, 77-78.

Both Early and Khan filed grievances regarding their being denied promotions with defendant Pugh on September 23, 1999, and with Brown and Wayne Bryant ("Bryant"), Director of Human Resources, on October 6, 1999. Plaintiff's Exh. FF, Early aff., ¶XVI. Defendants never responded to those grievances.

Brown met with Early and Khan and listened to their complaints but passed them onto Bryant to handle. Plaintiff's Exh. EE, Brown depo., Vol. II, pp. 142-43, 147-48. Bryant testified in his deposition that he never conducted an investigation into either grievance filed by Khan or Early because the grievance "never officially reached" him. Plaintiff's Exh. Y, Bryant depo., p. 69. Brown advised Williams that Early and Khan had met with him, that the meeting was confidential but that Bryant would discuss the specific details of the grievances with her. Plaintiff's Exh. EE, Brown depo., Vol. II, pp. 147-48. Brown testified that he did not know Early and Khan never received responses to their complaints until Brown was so advised at his deposition taken in conjunction with the case sub judice. Id. at p. 143.

This Court finds that plaintiff has provided evidence sufficient to overcome his burden of proof on his §1981 claim as to defendants' claims of entitlement to qualified immunity. Although plaintiff has failed to provide the Court evidence of a direct link between the actions complained of and the actors, Early has created a genuine issue of material fact as to whether defendants' conduct was objectively reasonable in the form of inferences that are to be resolved in the nonmovant's favor. See Reid, 784 F.2d at 578. In other words, plaintiff has raised a question as to whether defendants

8

"knowingly violated the law." Thus, plaintiff's §1981 claims against all individual defendants, other than Juanita Morris and Sam Gilliam, remain.

### B. §1983 Freedom of Association Claims.

In his Complaint, Early asserts that he was deprived of his "right to freely associate" with Khan, as secured by the First Amendment, when defendants allegedly retaliated against Early for publicly supporting Khan in her efforts to become Chief and disclosing that he had observed race and sex discrimination against Khan. See Complaint, ¶73.

The United States Supreme Court has recognized two categories of freedom of association claims. The first category involves "choices to enter into and maintain certain intimate human relationships," and is epitomized by "highly personal relationships" such as marriage and family, and the personal affiliations that necessarily "attend the creation and sustenance of these highly personal relationships." Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); Hobbs v. Hawkins, 968 F.2d 471, 482 (5th Cir. 1992). The second category "grants associational rights derivative of the First Amendment rights of speech, assembly, petition for the redress of grievances, and exercise of religion." Hobbs, 968 F.2d at 482.

After closely examining Early's Complaint and his opposition to defendants' motion, this Court finds that Early asserts the first type of freedom of association claim, the "freedom of intimate association." See Roberts, 468 U.S. at 618. The second strand of the constitutional right of association deals more with the right to join a union and to advocate in favor of unionization, Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945), or the rights of private

organizations to limit their membership, see Roberts, supra.[4] Nowhere in the Complaint does Early allege that he joined with or associated himself with Khan for the express purpose of speaking out on race and sex discrimination that may have been occurring at Southern University. Rather, Early alleges that the retaliatory acts "were directed at [him] primarily because he supported Mrs. Khan in her efforts to obtain an appointment to the rank of Lieutenant and an appointment to the position of Chief for the Southern University - Shreveport Campus Police, and because he refused to assist in the discriminatory actions being taken against Khan." Complaint, ¶¶16, 31; see also Plaintiffs' Opp., pp. 26, 34. In other words, Early's claim is based not on his desire to exercise any associational right secured by the First Amendment but on his personal belief that Khan was the most qualified person for the position of Chief. See Plaintiff's Exh. FF, Early aff., ¶VIII ("Ms. Khan was not selected as Chief of Police because she is a white woman, even though she was more qualified for the position.")

Being restricted to considering only the first category of association claims, this Court declines to classify Early's strictly professional relationship with Khan as the type of "highly personal relationship" that earns First Amendment protection. Although the First Amendment right of freedom of association was clearly established at the time of the allegedly retaliatory acts, Early's association with Khan simply was not the kind of familial or intimately close personal relationship that is protected by that right. Thus, defendants are entitled to qualified immunity as to plaintiff's freedom of association claims.

---

[4]"[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economical, educational, religious and cultural ends." Roberts, 468 U.S. at 622, 104 S.Ct. 3244.

## C.    §1983 Free Speech Claims.[5]

Early asserts that he was retaliated against for complaining of gender and race discrimination against Khan to Dr. Barry Hester, Vice-President of the Faculty Senate, and professor Willie Burton, President of the Faculty Senate. See Complaint, ¶70; see also Plaintiffs' Opp., p. 27. Early also asserts that he and Khan filed grievances concerning the denial of their promotions in September 1999, approximately eight months before his employment was terminated.[6] See Plaintiffs' Opp., p. 27. Early asserts that as a direct result of his association with, or support of, Khan, defendants Pugh and Williams attempted to place Early on the midnight shift. Id. Early alleges that Grady Morris falsely accused Early of stealing computers. Complaint, ¶20. Early further asserts that he was relieved of his authority to discipline officers, conduct background investigations of officers and draft disciplinary reports on officers who committed infractions. See Plaintiffs' Opp., p. 27. Finally, in his Complaint, Early asserts that he was not promoted to the permanent position of Assistant Chief of Police and was terminated as a result of his filing grievances asserting race discrimination.

The Court must first examine whether Early has actually alleged a violation of §1983. A public employer "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383,

---

[5]The Court notes that Early fails to specifically assert a "free speech" claim in his Complaint. However, in his opposition to defendants' motion for summary judgment, Early asserts, without citing evidentiary support, that he was retaliated against for exercising his free speech rights "on behalf of [Khan] in her bid to become the first Caucasian female Chief of Police (Lieutenant)." Plaintiffs' Opp., p. 27. Early also asserts that "[t]he acts of retaliation against [him] were effectuated for the purpose of causing a chilling effect on his free speech and associational rights." Id. Finally, plaintiff clearly states in his deposition that he is asserting a free speech claim. Early depo., p. 38.

[6]For a more detailed description of the evidence submitted regarding the grievances filed by Early and Khan, and how defendants handled those grievances, see Section II.A., supra

11

107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). A plaintiff seeking to recover on a §1983 retaliation claim for the exercise of his First Amendment rights must prove that: (1) the defendant was acting under color of state law; (2) the plaintiff's speech activities were protected under the First Amendment; and (3) the plaintiff's exercise of his protected right was a substantial or motivating factor in the defendant's actions. Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997). The Court must also evaluate whether: (1) the plaintiff suffered an adverse employment action; (2) the speech by the plaintiff involved a matter of "public concern"; (3) the plaintiff's interest in commenting on such matters outweighed the defendant's interest in promoting efficiency; and (4) the plaintiff's speech motivated the adverse action. Teague v. City of Flower Mound, 179 F.3d 377, 379 (5th Cir. 1999).

     1.    Public concern.

     The threshold question as to Early's free speech retaliation claim is whether Early can show that he was deprived of a clearly established right. "Retaliation by an employer for an employee's speech is actionable under §1983 only if the speech addressed a matter of public concern." Foley, 355 F.3d at 341, citing Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether it does so depends on the content, form and context of a given statement. Id. The Connick Court elaborated on its general rule holding that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147, 103 S.Ct. 1684; see also Teague, 179 F.3d at 380.

     The Fifth Circuit has stated that a protest against racial discrimination is inherently of public concern. See Victor v. McElveen, 150 F.3d 451, 456 (5th Cir. 1998). According to Early, he

12

complained to Gant, Hester and Burton about the sexist and racist treatment of Khan. The only

documents in the record that provide the content of one of Early's complaints are the October 6,

1999 "Memorandum" from Early to Brown that has attached to it the "Grievance" submitted by

Early on September 23, 1999. In his Grievance, Early states the following:

> My PAF for Interim Sergeant was not renewed for unspecific reasons. I felt as
> though I am suffering adverse discrimination due to the fact that I am in support of
> Interim Chief Khan getting the Chief of Police position. I have approved {*sic*} for
> the Sergeants position by Civil Service. I've been prohibited by the Administration
> from performing my duties to include: Personnel decisions, disciplinary actions, and
> other related functions.

Plaintiffs' Exh. NN. In Early's "Response to Grievance" Memorandum, he states that he "has

experienced bias {*sic*} treatment involving [his] interim position as Sergeant." He also asserts that

Williams has a conflict of interest in selecting the new Chief when the husband of Williams'

secretary is an applicant for the position of Chief. Early further advises Brown that:

> [t]here are a number of issues you are not aware of and probably receiving false
> information on a number of subjects. Mr. Benjamin Pugh removed me from my
> position before his departure. This was his last act to show bias {*sic*} treatment
> towards me. The Grievance has been passed over and overlooked just like the other
> ideas or proposals that were put forth. I am attaching a copy of the grievance letter
> along with this memo. Your immediate response to this unfortunate situation may
> provide the necessary answers to which you are seeking {*sic*}.

Id. Although the evidence regarding Early's complaints is vague, this Court must draw all inferences

in favor of the nonmoving party. Reid, 784 F.2d at 578. Consequently, this Court must find for

purposes of summary judgment that Early's expression can be "fairly considered as relating to [a]

matter of political, social, or other concern to the community[.]" Connick, 461 U.S. at 146, 103 S.Ct.

1684.

Generally, Early complained to certain supervisors about the racial discrimination of a fellow

employee. His complaints cannot be classified as matters of purely personal interest. On the other hand, the context and form of Early's complaints are not so clear cut as was the case in <u>Victor</u>, <u>supra</u>, that this Court can unquestionably state that the complaints involved a matter of public concern.

In <u>Victor</u>, 150 F.3d at 456, the plaintiff, Eugene Victor ("Victor"), spoke out about racial discrimination at a meeting arranged by the sheriff to inform a group of black deputies, including Victor, about a newly federally funded program to be administered by the sheriff's office to provide community oriented police service ("COPS") in a high crime area inhabited predominantly by black citizens. Representatives of the press attended the meeting. The sheriff invited the deputies to speak freely about the program without fear of retribution for their comments. When Victor criticized the COPS program, Victor was content with his employment position; there was no evidence that he was a disgruntled employee or had any personal reason to protest what he considered to be the racially discriminatory effect of the sheriff's approach to the new program. The <u>Victor</u> Court determined that "Victor's speech had the earmarks of a citizen speaking out publicly on a matter of general concern, not that of an employee engaged in a personal employment dispute." <u>Id.</u>

Defendants did not address the issue of "public concern" in their motion for summary judgment. As they did not "point out" that evidence of the public concern element was lacking, <u>see</u> Celotex Corp., 477 U.S. at 325, plaintiff was not in a position to have to provide support under Rule 56. The Court merely addresses the element in an effort to show yet again that genuine issues of material fact remain for trial of this matter.

        2.       <u>Adverse employment actions.</u>

Not all of the actions allegedly taken in retaliation against Early are actionable. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and

reprimands." Harrington, 118 F.3d at 365 (internal quotations and citations omitted). Actions such as administrative matters and departmental procedures have been held not to rise to the level of constitutional deprivations. See id. Therefore, the only actionable events in the case sub judice are defendants' refusal to promote Early and Early's employment termination.

3.   Individual liability for employment termination and failure to promote under §1983.

To be liable to Early, the individual defendant would have to have, at the least, some sort of authority over his employment. As the wife of Grady Morris and the secretary to Williams, defendant Juanita Morris clearly did not have such authority. In addition, as noted above, defendant Gilliam was not in a position of authority at the time of the adverse employment actions. Thus, any §1983 free speech claims against Juanita Morris and Sam Gilliam must be dismissed.

However, as to the other defendants named in their individual capacities, defendants have merely asserted, without evidentiary support, that "all other individual defendants had no authority or power to hire/fire - sole authority lay with the Board." Defendants' Motion for Dismissal and Summary Judgment, p. 22. The Fifth Circuit has stated that "direct participation is not necessary for liability under §1983. Any official who 'causes' a citizen to be deprived of [his] constitutional rights can also be held liable." Morris v. Dearborne, 181 F.3d 657, 672 (5th Cir. 1999), citing Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990).

In Morris, supra, the defendant, Charlotte Dearborne ("Dearborne"), was the plaintiffs' child's teacher who caused the plaintiffs' child to type sexually explicit and graphically violent phrases while the two were working with a Facilitated Communicator ("FC").[7] The discovery of

---

[7]See Callahan v. Lancaster-Lebanon Intermediate Unit 13, 880 F.Supp. 319 n. 14 (E.D.Pa.1994), for a thorough collection of sources regarding FC, including the following policy

these phrases caused the plaintiffs to be suspected of sexually abusing their four-year-old daughter. The plaintiffs' daughter was removed from the plaintiffs' home based on the suspicions of sexual abuse. The Texas Department of Protective & Regulatory Services ("TDPRS") initiated a suit to permanently terminate the plaintiffs' parental rights. After all was said and done, the plaintiffs lost custody of their daughter for three years. Following an investigation, TDPRS eventually allowed the child to return home and dismissed the termination suit without prejudice.

Dearborne filed a motion for summary judgment wherein she asserted, inter alia, that she merely reported abuse allegations, while a state court judge made the decision to remove the four-year-old from her home. Therefore, Dearborn did not cause any constitutional violation. The Fifth Circuit affirmed the district court's denial of Dearborne's motion as to her § 1983 claims, and found that "[a] fact issue exists regarding the extent to which (if at all) Dearborne subverted the ability of the court to conduct independent decision making by providing false information, and in so doing, withholding true information. The parties will have the opportunity at trial to develop the facts which will resolve the question of causation." Morris, 181 F.3d at 673. In other words, a question remained as to whether Dearborne set in motion the events that led to the deprivation of the plaintiffs' constitutional rights.

---

statement issued by the American Academy of Child and Adolescent Psychiatry, October 20, 1993:

> Facilitated Communication (FC) is a process by which a "facilitator" supports the hand or arm of a communicatively impaired individual while using a keyboard or typing device. It has been claimed that this process enables persons with autism or mental retardation to communicate. Studies have repeatedly demonstrated that FC is not a scientifically valid technique for individuals with autism or mental retardation. In particular, information obtained via FC should not be used to confirm or deny allegations of abuse or to make diagnostic or treatment decisions.

In the case before this Court, Pugh served as direct supervisor of the Southern University police department. Pugh aff., ¶2. Defendant Pugh recommended to acting Chancellor Gilliam that Khan be detailed to Interim Lieutenant. Pugh aff., ¶3. After requesting a list of eligible employees, and obtaining that list, Pugh, along with Williams, conducted the interviews for the permanent Lieutenant, or "Chief," position. Id. at ¶7. Pugh asserts that the candidate with the highest ranking, Grady Morris, was chosen. Id. Pugh, acting Vice-Chancellor in 1999, had the authority to terminate Early's interim detail to Sergeant without cause. Id. at ¶11. Pugh asserts that he felt it was in the best interest of the Southern police force to terminate Early's interim detail based on complaints he allegedly received from Grady Morris, Johnson and Hill regarding Early's leadership style and actions. Id.; see also Pugh aff., Exh. F.

On the other hand, plaintiff submitted the deposition of Wallace Webster ("Webster"), Chief of Police for Southern University from 1989 to 1990. Plaintiff's Exh. F, Webster depo., p. 15. Webster testified that he never had any problems with Early regarding his performance but that he had rejected Grady Morris' job application for a position on the Southern police force based on Grady Morris' record. Id. at p. 21. Specifically, Webster noted that Grady Morris had allegedly previously been charged with brutality against an inmate when he worked for the Caddo Parish Sheriff's Department. Webster also testified that he had heard Grady Morris say that Khan "ought to be back over there at LSU with all them white folks." Id. at p. 24. Plaintiff also submitted evidence showing that Grady Morris may have made false statements on his application for state employment.

Defendant Williams, in her position as Vice Chancellor, appointed Grady Morris as Sergeant, or "Assistant Chief," effective October 20, 1999. Plaintiff's Exh. I, Grady Morris depo., pp. 29-30.

Defendant Brown signed the Personnel Action Form ("PAF") on October 28, 1999. Grady Morris was appointed by Williams and Brown as Lieutenant effective January 1, 2000.

Genuine issues of material fact remain as to plaintiff's §1983 free speech claims against defendants Brown, Grady Morris, Pugh and Williams. Accordingly, those claims remain.

### D. §1983 Due Process Claims.

Early asserts in his Complaint that the acts of Williams and Grady Morris "in simultaneously seeking retroactive termination of Mr. Early's employment while denying him use of annual leave or accumulated compensatory time have effectively deprived Mr. Early of his right to pre-termination proceedings and amount to a constructive discharge from his employment. . . . [and Early] has thus been deprived of his right to continued employment without due process of law." Complaint, ¶74.[8]

### 1. Procedural Due Process.

Early's procedural due process claim depends upon his having a property interest in continued employment. Schaper v. City of Huntsville, 813 F.2d 709, 713 (5th Cir. 1987). The Constitution does not create property interests. Rather, those interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Once a state has conferred a property right, it cannot constitutionally deprive a person of such an interest without appropriate procedural safeguards. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

---

[8]Defendants address the purported claims of Early that his due process rights were violated with regard to his filing internal grievances. However, plaintiff does not make such an allegation in his Complaint. See Complaint, ¶74. Thus, this Court need not address that issue.

Defendants concede, without citing any authority, that "[c]ivil service employees with permanent status do have a property right." Defendants' Mem. in Support of Motion for Dismissal, p. 27. Defendants further state that Early served in a classified civil service position, "a property right of employment." Id. at p. 30. Based on these statements, the Court will assume that defendants concede that Early was an employee with permanent status.

Assuming solely for purposes of this Ruling that defendants concede that Early had a protected property interest in continued employment, this Court must continue with the qualified immunity analysis and ask whether defendants violated his due process rights in that property interest. Samuel v. Holmes, 138 F.3d 173, 177 (5th Cir. 1998). "Once it is determined that a public employee has a protected interest in continued employment, the Constitution requires that he be given notice and an opportunity to be heard prior to termination." Jones v. Orleans Parish Sch. Bd., 679 F.2d 32, 36 (5th Cir.), modified on other grounds, 688 F.2d 342 (5th Cir. 1982). According to Early, his employment was terminated without the benefit of a pre-termination hearing, although one was requested. Plaintiff's Exh. FF, Early aff., ¶XVI.

The Court is unable to discern defendants' position on what hearing, if any, was conducted. Defendants do not seem to deny that Early was deprived of a hearing. Rather, defendants focus on the post-termination remedies available to Early by virtue of the Civil Service Rules. This Court is aware of the Parratt/Hudson rule[9] that a deprivation resulting from a "random and unauthorized act" or an intentional act of a state official does not violate procedural due process when state law provides an adequate post-deprivation remedy. However, defendants fail to direct the Court to the

---

[9]See Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); see also Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

source of their conclusory allegations regarding the post-deprivation remedies available. This Court is not required to take judicial notice of state civil service rules. Drawing all inferences in favor of Early, a genuine issue of material fact remains as to whether plaintiff's procedural due process rights were violated. See Reid, 784 F.2d at 578. Thus, plaintiff has met his burden of proof and has created a genuine issue for trial.

2. Substantive due process.

While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution. Schaper, 813 F.2d at 716, citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Fifth Circuit has held that a public employee has a substantive due process right by virtue of his state property interest in continued employment. Schaper, 813 F.2d at 717. Thus, as a classified employee, Early has a substantive due process right in his continued employment. However, the Court finds that defendants failed to adequately brief the issue of substantive due process. Therefore, the Court need not address whether defendants are entitled to qualified immunity as to this claim.

**E. §1985 and §1986 Claims.**

Title 42 U.S.C. §§1985 and 1986 speak to conspiracies to interfere with civil rights. Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000). A conspiracy may be charged under §1985 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but "a conspiracy claim is not actionable without an actual violation of section 1983." Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir.1990), abrogated on other grounds by Martin v. Thomas, 973 F.2d 449 (5th Cir.1992). Section 1986 allows

a cause of action against the party who had knowledge of a §1985 conspiracy, had the power to prevent it and then failed to do so. Therefore, §1986 claims necessarily depend upon a preexisting violation of §1985. <u>Bryan</u>, 213 F.3d at 276.

> Early asserts that all individually named defendants:

> conspired and agreed to engage in the . . . purposeful acts of retaliation directed against . . . Early, because Mrs. Khan and Mr. Early openly opposed and complained about the unlawful racial discrimination practiced against Mrs. Khan to prevent her from obtaining a permanent appointment as Police Commander and Police Chief of the Southern University-Shreveport Campus, while securing the appointment of Grady Morris to that position.

Complaint, ¶80. Early further alleges that defendants Brown, Gilliam and Southern were aware of the conspiracy to deprive Khan and Early "of the rights, privileges and immunities through the commission of the alleged acts of discrimination." Complaint, ¶85. "Notwithstanding this knowledge, defendants Gilliam, Brown and Southern University, having the power to prevent or aid in preventing the commission of these acts refused and neglected to do so." <u>Id.</u>

To the extent that this Court has determined defendants are entitled to qualified immunity on plaintiff's §1983 freedom of association claim, there is no need to reach the issue of whether a conspiracy to violate such a right existed. <u>See</u> <u>Hale v. Townley</u>, 45 F.3d 914, 920-21 (5th Cir. 1995), citing <u>Pfannstiel</u>, 918 F.2d at 1187-88 (when each state action alleged to have harmed a plaintiff was determined to be qualifiedly immune, there was no need to reach the issue of whether a conspiracy existed to engage in those actions). Likewise, the Court need not discuss any §1985 claims against Juanita Morris or Sam Gilliam. Further, at all relevant times, Gilliam had no power to prevent the allegedly discriminatory actions. Accordingly, the §1986 claim against Gilliam must be dismissed.

To the extent that this Court has determined that certain defendants are not entitled to

qualified immunity on plaintiff's §1983 freedom of speech and due process claims, those defendants are not entitled to qualified immunity as to those claims asserted under §1985. Further, as discussed supra, plaintiff has raised genuine issues of material fact regarding whether Brown knew of a §1985 conspiracy to violate the rights of Early, whether Brown had the power to prevent it, and whether he failed to do so. Plaintiff has met his burden on summary judgment with regard to the §1986 claim against Brown.

## CONCLUSION

For the reasons stated above, defendants are entitled to qualified immunity as to plaintiff's §1983 freedom of association claims. Further, plaintiff's §§1981, 1983 and 1985 claims against defendants Juanita Morris and Sam Gilliam are **DISMISSED** as is plaintiff's §1986 claim against Sam Gilliam. Finally, genuine issues of material fact remain as to all other claims discussed herein.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE